UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-11-GWU

CHRISTINE C. EVANS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity?  If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

07-11 Evans

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

>pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

07-11  Evans

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately

Case: 0:07-cv-00011-GWU Doc #: 7 Filed: 12/06/07 Page: 7 of 14 - Page ID#: 63

07-11 Evans

portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Christine C. Evans, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of bilateral carpal tunnel syndrome (status post release surgery) and chronic pain syndrome.  (Tr. 24).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Evans retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 24-9).  The Appeals Council declined to review, and this action followed.

At the second of two administrative hearings, the ALJ asked the VE whether an individual of the plaintiff's age of 49, with a work history as a secretary, could perform any jobs if she were capable of "medium" level exertion, and also had the following non-exertional impairments. (Tr. 371-2). She: (1) could occasionally climb ladders, ropes, or scaffolds; (2) could occasionally push and pull with her upper extremities and engage in gross manipulation; and (3) should avoid vibratory tools and equipment.  (Tr. 372).  The VE responded that the plaintiff could not perform her past relevant work as a secretary due to the limitation on gross manipulation, but identified the jobs of industrial cleaner, bagger/bundler, and housekeeper as being within the hypothetical person's ability, and proceeded to give the numbers in which the jobs existed in the state and national economies.  (Id.).

07-11  Evans

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mrs. Evans alleged disability beginning December 29, 2000 due to carpal tunnel syndrome in both arms, neck pain and shoulder pain. (Tr. 86). At her administrative hearings, she also described difficulty with dizziness which had been diagnosed as Meniere's disease, for which she took medication that caused drowsiness (Tr. 326, 353-4), weakness which caused her to fall and made it difficult to climb steps (Tr. 365), and legal blindness in the left eye (Tr. 355). She had been diagnosed as having hydrocephalus, or water on the brain, but had been told it was not a severe condition, although she felt that it caused confusion and forgetfulness. (Tr. 355-6). Regarding her arm pain, Mrs. Evans testified that it caused her to drop things and it was impossible to type or do any repetitive motions. (Tr. 327, 352). She felt that her left arm was practically useless most of the time. (Tr. 351). She was taking medications for depression. (Tr. 361-2).

Medical records in the transcript show that the plaintiff underwent carpal tunnel surgery on the right arm in December, 2001. (Tr. 153-4). This was apparently followed by left carpal tunnel surgery in March, 2002. The plaintiff reported to Dr. James Templin in January, 2003 that she had an 80 percent reduction in her symptomology after the right carpal tunnel surgery and a 70 percent reduction in symptomology after the left side carpal tunnel surgery. (Tr. 156). She

underwent a right thumb trigger release procedure in October, 2002, with a reported 30 percent reduction in symptomology.  (Id.).

Dr. Templin conducted a consultative physical examination, as previously noted, on January 23, 2003 and reviewed many previous records.  (Tr. 155-6).  The records included a lumbrosacral MRI from August 23, 2001 showing a bulging disc at L4-5 causing a slight narrowing of the spinal canal and EMG/NCV examinations showing carpal tunnel syndrome prior to the release surgery. (Tr. 157).  His physical examination showed mild tenderness in the cervical spine, "slightly positive" Tinel and Phalen signs on both wrists, a full range of motion of the right thumb, mild tenderness over the left shoulder with a full range of motion, and no neurological abnormalities of the upper extremities.  (Id.).  The lower lumbar spine showed tenderness, but with a full range of motion, decreased sensation in the right leg in a dermatomal pattern "fairly consistent" with L5 and a normal range of motion of the hips.  (Id.).  Dr. Templin diagnosed chronic low back pain syndrome, degenerative lumbar disc disease, a history of bilateral carpal tunnel syndrome (status post release surgery), and a history of right-sided trigger thumb (status post release surgery).  (Tr. 158).  In terms of functional restrictions, Dr. Templin opined that Mrs. Evans should not lift more than 20 pounds from waist level or 10 pounds from floor level, should avoid activities requiring repetitive use of the arms for pushing, pulling, lifting, twisting, turning, grasping, holding, carrying, or any use of vibratory hand tools, should avoid using the left arm above the shoulder for any extended time, and

should avoid activities requiring frequent bending, stooping, kneeling, squatting, crouching, lifting, carrying, climbing, or riding in or on vibratory vehicles. (Tr. 160).

A state agency physician, Dr. John Rawlings, reviewed the evidence on June 26, 2003 and concluded that the plaintiff could perform "medium" level exertion with non-exertional restrictions consistent with the ALJ's hypothetical question. (Tr. 213-21). Dr. Rawlings stated that Dr. Templin's examination results supported his restrictions on repetitive use of the arms and use of vibratory hand tools, as well as the restrictions on using the left arm above the shoulder. (Tr. 215). However, he did not believe that the restrictions on bending, kneeling, squatting, etc., were entitled to more than "moderate" weight since Dr. Templin's examination had shown a normal range of motion of the spine and joints of the lower extremities and a normal neurological examination. He also felt that the lifting restrictions to 20 pounds were not fully supported. Another state agency physician, Dr. S. Mukherjee, reviewed the evidence on October 2, 2003 and agreed with Dr. Rawlings's conclusions. (Tr. 234-31).

The plaintiff asserts on appeal that it was error not to accept Dr. Templin's restrictions. As the only examining source to express an opinion regarding detailed functional restrictions, Dr. Templin's opinion would normally be entitled to considerable weight. In this case, it could be offset by the opinion of Dr. Rawlings, the reviewing source. The opinion of a non-examining expert may be accepted over that of an examiner where the non-examiner has had the benefit of the review of the

entire record and clearly stated the reason that his opinion differed from that of the examiner.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  Dr. Rawlings discussed Dr. Templin's findings and opinion in detail and explained that he did not believe that all of Dr. Templin's restrictions were supported by objective findings.  As far as it goes, his opinion would therefore appear at first glance to support the factors in the ALJ's hypothetical question, which followed the checkmarks on the form Dr. Rawlings completed.  However, there is a discrepancy between the narrative report and the checkmarks.

Dr. Rawlings specifically stated in the narrative that Dr. Templin's opinion that the plaintiff should avoid activities requiring the use of the left arm above shoulder level was entitled to great weight as it was largely supported by his examination.  (Tr. 215).  No restriction on using the left arm overhead, or reaching, was given to the VE.  Moreover, a subsequent examination by a neurosurgeon, Dr. Brett Scott, noted a "very positive Adson's maneuver" and tenderness in the supraclavicular fossa.  (Tr. 259).[1]  Dr. Scott ordered an MRI of the cervical spine which showed good alignment but some dessication of the cervical discs, and listed his impression as possible thoracic outlet syndrome.  (Tr. 258).  Although the physician did not discuss any functional restrictions, and noted that there was no indication for surgery, he recommended a further evaluation by a neurologist.  (Id.).  Therefore,

---

[1] Adson's maneuver is intended to detect thoracic outlet syndrome.  Dorland's Illustrated Medical Dictionary, 27th Ed., p. 1674.

07-11  Evans

to a lay reviewer, the evidence from this source does not clearly refute the indications by Drs. Templin and Rawlings that the plaintiff would have a limitation on reaching with her left arm.

Social Security Ruling 85-15 states that reaching is an activity required in almost all jobs, and significant limitations of reaching and handling may eliminate a large number of occupations a person could otherwise do.  It suggests the assistance of a vocational expert to determine the effects of the limitations.  SSR 85-15, p. 7.  Therefore, a remand will be required in order to consider the combined effects of the plaintiff's non-exertional limitations.

The plaintiff makes several additional arguments on appeal.

First, she argues that the plaintiff was 50 years old on the date of the final decision by the Commissioner, but apparently believes that the Commissioner's final decision was the date of the Appeals Council's denial of her request for a review of the ALJ's decision.  The Appeals Council's denial was dated December 5, 2006 (Tr. 11), approximately two months after the plaintiff's 50th birthday.  (Tr. 72).  However, the ALJ's decision was issued June 22, 2006 (Tr. 29), at which time the plaintiff was still 49 years old.  When the Appeals Council declines to review an ALJ's decision, the ALJ's decision becomes the final decision of the Commissioner. Cotton v. Sullivan, 2 F.3d 692, 695-6 (6th Cir. 1993); see 20 C.F.R Section 404.981. In any case, although the ALJ could have considered the plaintiff to have been in a borderline age situation, since the Medical-Vocational Guidelines are not to be

applied mechanically, 20 C.F.R. Section 404.1563(b); Crady v. Secretary of Health and Human Services, 835 F.2d 617, 622 (6th Cir. 1987), the plaintiff has not shown that any applicable "grid" rule would direct a conclusion of "disabled" even if she were considered to be "closely approaching advanced age." As the Commissioner points out, Rule 201.21, which would appear to match the plaintiff's vocational profile of a high school education or more and a work history described as skilled or semi-skilled with no transferrable skills, would still direct a finding of "not disabled."

The plaintiff's argument that she could not perform medium level exertion because she had been found to be unable to return to a sedentary job is without merit, since her work as a secretary also encompassed non-exertional restrictions which the VE specifically testified would prevent the performance of secretarial duties. (Tr. 372). In other words, she was not precluded from her past work because of lifting requirements.

Finally, the plaintiff asserts that it was error not to consider the fact that she was legally blind in her left eye. The Commissioner responds that the plaintiff did not establish restrictions from this cause other than an inability to use a computer with frequency. The evidence from James Elliott, a doctor of optometry, was that the plaintiff could do no computer work, would have moderate to severe phobophobia and distortions from night vision, and the condition would interfere with her ability to copy information from one place to another. (Tr. 240, 257, 266). Dr.

Elliott, however, may not be an acceptable medical source under 20 C.F.R. Section 404.1513. Moreover, it is not entirely clear whether this blindness was a lifelong condition. If so, the ability of the plaintiff to work for many years despite the problem would mean her blindness had no real effect on the disability determination. Auer v. Secretary of Health and Human Services, 830 F.2d 594, 596 (6th Cir. 1987).

The plaintiff also submitted additional evidence to the Appeals Council, which may be considered along with other new evidence on remand.

The decision will be remanded for further consideration.

This the 6th day of December, 2007.

Signed By:
G. Wix Unthank
United States Senior Judge